UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     -against-                        1:05-CR-487
                                       (LEK)

KOFI YEVAKPOR,

                  Defendant.

_____

## MEMORANDUM-DECISION AND ORDER[1]

### I. Background

     Defendant Kofi Yevakpor ("Defendant") has been indicted on two (2) felony counts: (a) attempted importation of a controlled substance from Canada - namely heroin, a Schedule I controlled substance - in violation of 21 U.S.C. §§ 952, 960 & 963; and (b) possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841.  See Indictment (Dkt. No. 5).  The amount of heroin exceeds one (1) pound - actually weighing about 5.8 pounds.  See id.; Complaint (Dkt. No. 1).

     The Government possesses numerous pieces of evidence that it intends to use at trial, and a number of witnesses that it intends to call.  See Gov't Proposed Witness List (Dkt. No. 22); Gov't Proposed Exhibit List (Dkt. No. 23).  The Government's evidence includes three one-minute video segments that were recorded by the Customs Area Security Center ("CASC") system "which consists of a series of cameras at the Champlain, New York Port of Entry which run continuously and capture video images at different locations within the facility."  Gov't Response to Motion (Dkt.

---

[1] For printed publication by the Federal Reporters.

No. 27) at 2-3.  The video clips were recorded during the border stop and search of Defendant.  See Gov't Proposed Exhibit List (Dkt. No. 23) at 2, Ex. 10.  According to the Government's papers, "[t]he images are recorded on a DVR machine and can be preserved on a compact disc.  The system continuously records and tapes over stored images every 6 to 7 days."  Gov't Response to Motion (Dkt. No. 27) at 3.

Defendant has filed a motion *in limine* challenging the Government's use of the three one-minute video segments, arguing, *inter alia*, that the "surveillance provided to the defendant to date is not complete and only represents a small clip of the entire time the defendant was recorded in and about the secondary inspection area."  See Deft's Second Motion *in limine* (Dkt. No. 18) at 2.  The Court reads this language in the Motion as challenging the proffered evidence under, *inter alia*, Federal Rule of Evidence ("FRE") 106.

A second pre-trial evidentiary issue has also been raised by the parties.  By letter dated January 26, 2006, the Government provided notice to Defendant of its intent to call New York State Police Senior Investigator Samuel Mercado ("Mercado") as an expert witness.  Letter from AUSA (Dkt. No. 17, Attach. 2; Dkt. No. 26, Attach. 1).  The Government intends to call Mercado to testify on the value of the heroin involved in the case and the role and methods of transporters in heroin trafficking.  This includes the type of heroine seized, the origins of the heroine, its purity, the typical wholesale value per kilogram, the retail value per glassine baggie, the difference in retail value depending on location of sale, the typical wholesale weight of a gram, the pricing formula, the estimated value of the heroin seized and the estimated net profits using a price of $10.00 per glassine baggie based upon 10,000 glassine bags per kilogram after sale in New York City.  Id.  The Government also seeks to have Mercado testify as to the methods used to bring heroin across an

2

international border, the typical charge for transporting heroin, and the ways in which transporters receive compensation.  Id.  Mercado is not a fact witness in the present case, and the substance of his testimony will be based upon his training, experience and review of the reports, records and evidence in this case.

Defendant seeks to exclude Mercado's testimony by a Motion *in limine* dated January 30, 2006.  Deft's First Motion *in limine* (Dkt. No. 17, Attach. 1).  Defendant contends that the Government failed to give proper notice, and that Mercado's testimony is otherwise prejudicial, irrelevant, confusing and cumulative.  Id.

The Court held a conference with counsel, on Wednesday, February 1, 2006, to address these issues.  See Minute Entry (Dkt. No. 24).  It appears that the Government does not possess any video other than the three one-minute segments, as the rest of the tape was recorded-over or erased by the Port personnel.  The Court has viewed the three one-minute segments of videotape.

For the reasons that follow, the Court grants Defendant's Second Motion *in limine* (Dkt. No. 18) as to the three one-minute videotape segments, and will not allow the admission or use of the videotape segments at trial.  However, the Court denies the First Motion *in limine* (Dkt. No. 17) as to the testimony by the Government's expert witness - with limitations as to the scope of said testimony.

## II.  Discussion

### *A.  Standard of Law*

"The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."... "A motion *in limine* to preclude evidence calls on the court to make a preliminary determination on the admissibility of the evidence under Rule 104 of the Federal Rules of Evidence."... "Evidence

should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."... A district court's *in limine* ruling "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the... proffer."

Highland Capital Mgmt., L.P. v. Schneider, 379 F. Supp. 2d 461, 467 (S.D.N.Y. 2005) (citing and

quoting, *inter alia*, Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996) (citation and internal

quotation marks omitted); Commerce Funding Corp. v. Comprehensive Habilitation Servs., Inc.,

No. 01 Civ. 3796(PKL), 2004 WL 1970144, at *4 (S.D.N.Y. Sept. 3, 2004) (citing FED. R. EVID.

104(a)); Luce v. United States, 469 U.S. 38, 41 (1984)).

### *B.  The Three One-Minute Videotape Segments*

When the Court viewed the three one-minute videotape segments, the following was

observed:

> Segment 1:  October 18, 2005 - 13:40:00 to 13:40:59 (1:40 P.M. to 1:40:59 P.M.):
> Defendant being detained at the secondary inspection area, Defendant carrying suitcase(s) from car into inspection area.
> Segment 2:  October 18, 2005 - 13:59:00 to 13:59:59 (1:59 P.M. to 1:59:59 P.M.):  Search of suitcase(s) by officers, and Defendant's attempted use of cellular telephone.
> Segment 3:  October 18, 2005 - 14:04:00 to 14:04:59 (2:04 P.M. to 2:04:59 P.M.):
> Defendant and a companion sitting in secondary area, where Defendant allegedly gives materials/documents to companion, while suitcase(s) had been taken to another location.

Gov't Proposed Exhibit List (Dkt. No. 23) at 2, Ex. 10.

The video segments do not clearly show the results of any search; they do not show a search

of Defendant's person or of his companion's person before, during or after the border stop; and they

do not show Defendant's subsequent arrest or anything else that may have occurred during the

border stop and search.  There is no volume or audio component accompanying the visual.

Furthermore, the three video segments have been preserved to the exclusion of the rest of the

video surveillance, and neither the Government nor Defendant are certain how much else existed on the videotape prior to erasure/re-recording. From viewing the time stamps on the video segments, however, the Court notes that at least twenty-two (22) minutes of tape are missing from the first to the third segment (eighteen (18) minutes between segments one and two, and four (4) minutes between segments two and three). No one is certain how much tape, if any, existed before segment one or after segment three.

Federal Rule of Evidence 106 at least partially codifies the "Doctrine of Completeness", and states that: "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." FED. R. EVID. 106. See, generally, Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 171-72 (1988) (Brennan, J.). Defendant has argued that the video surveillance is incomplete and represents only a small portion of time from the overall stop and search.

It is difficult to determine whether "any other part... ought... be considered contemporaneously with" the proffered part since no other parts of the video exist for review by the Government or the Defense. FED. R. EVID. 106. The Government argues that "[t]o sustain a Rule 106 objection, 'the party urging admission must specify the portion of the testimony that is relevant to the issue at trial and that qualifies or explains portions already admitted.'" Gov't Response to Motion (Dkt. No. 27) at 6 (citing and quoting United States v. King, 351 F.3d 859, 866 (8th Cir. 2003); United States v. Flentge, 151 Fed. Appx. 490, 491-92 (8th Cir. 2005) (unpublished)). And, the Government argues that the Defendant must identify specific portions of the missing or excluded evidence that would be relevant to the case. See id. This is a harsh standard to apply considering

5

that the Defendant cannot know what missing portions would be relevant since the Government has

not preserved the entire range of video.

The Government has stated the following:

In the instant case, the proffered video clips are in no way misleading, nor do the[y] provide
an incomplete or distorted view of the scenes that they purport to show.  Like a snapshot
photograph, they represent complete versions of the three important events that occurred
during the encounter with Yevakpor in the secondary inspection area.  In this regard, it is
respectfully submitted that had the camera system taken still photographs, such photographs
would constitute admissible evidence.  The fact that other portions of the encounter were not
preserved (or that photographs of other portions of the event were not taken) is a matter that
goes to the weight of the evidence, not its admissibility.

Gov't Response to Motion (Dkt. No. 27) at 6-7.  While the Court does not doubt the U.S. Attorney's

good faith, the still photographs are a different kind of evidence, and are not interchangeable with

video recordings.  There is a reason that surveillance is now conducted with video recordings and

not still photography - the video recordings provide a more complete picture of events, a continuous

stream of information, with less risk of scenes being taken out of context.  That benefit is curtailed

in this case due to Customs' failure to preserve the entire video.  In fact, it was not an inadvertent

failure by Customs to preserve, but an affirmative order by a Customs supervisor to only preserve

the selected three minutes of tape knowing that the subject of the video was to face criminal

proceedings.  The Government's briefing states: "a Supervisory U.S. Customs and Border Patrol

('CBP') Officer directed CASC system operator Thomas Bartlett (a CBP officer) to preserve three

portions of the encounter with Yevakpor".  Gov't Response to Motion (Dkt. No. 27) at 3.  The

Supervisory Officer did not direct that the entire video recording be preserved - a relatively easy and

inexpensive task considering that the video can be saved to compact disc, by the Government's own

6

admission.[2]  Instead, the Supervisory Officer instructed that three separate segments be preserved, a task requiring greater effort and time.  This was not an inadvertent erasure, and, such spoliation, especially in a criminal case where one's very liberty is at stake, is unacceptable.

This Court does not believe that the investigatory agency would delete material that was beneficial to the Government's case.  Therefore, the missing recording was, at best, neutral and, at worst, adverse to the Government's case or of an exculpatory nature for the Defendant.  Thus, there is an appearance of impropriety on the part of the Government agency in only preserving about 12.5% of the amount of video affirmatively known to have existed.  There is potential that the Defense was hampered by the loss of the remaining 87.5% of known video.  Even if the video contained nothing of value to the Defense, that is something Defendant had the right to determine for himself after viewing the video as a whole.  With that loss of opportunity, the Court finds the only tenable solution to be one of exclusion - exclusion of the remaining three minutes of Government-proffered surveillance video.

In this case, the Government's trial preparation concerning use of the video segments was conducted by the investigatory agency (namely Customs), and not the United States Attorney's Office.  It was the Customs agency that chose to preserve only certain segments that it believed to be relevant, in dereliction of its duty as an investigatory agency to preserve material evidence concerning an alleged crime.  See, generally, United States v. Schwartz, 924 F.2d 410, 423 (2d Cir.

---

[2] It should be noted that even where courts have instructed the prosecution to edit tapes for one reason or another, the instruction has included the caveat that an unedited version be retained.  Such was the case in United States v. Mongelli, where the Court had directed the prosecution, in part: "(2) to eliminate any inaudible or unintelligible portion from its offer or from an edited portion to be actually played at trial (*retaining the original in unedited form*)...."  United States v. Mongelli, 799 F. Supp. 21, 22 n.1 (S.D.N.Y. 1992) (emphasis added; addressing the minimization requirement of 18 U.S.C. § 2518 as to tape recording surveillance).

1991); United States v. Browning, Inc., 572 F.2d 720 (10th Cir. 1978); Adams v. United States, 65

Fed. Cl. 195 (2005); United States v. Biheiri, 356 F. Supp. 2d 589, 596 (E.D. Va. 2005); 21A AM.

JUR. 2D *Customs Duties* § 134 (2005); 3 C.J.S. *Aliens* § 242 (2005).  Although the Government

argues that the recording-over of the lost video was routine, and not in bad faith, see Gov't

Response to Motion (Dkt. No. 27) at 8, such action was not appropriate for an investigatory agency.

In fact, some cases have acknowledged that within the Second Circuit, there is a duty

incumbent upon prosecutors to instruct agencies not to destroy evidence, such as tapes.  See United

States v. Ungar, 648 F. Supp. 1329, 1336 (E.D.N.Y. 1986) (citing United States v. Henriquez, 731

F.2d 131, 137-38 (2d Cir. 1984)).

> "[T]he government has long been on notice of its duty to preserve discoverable evidence and
> has been repeatedly warned of the jeopardy in which it places its prosecutions when it
> disregards this obligation."... "Where, as here, destruction is deliberate, sanctions will
> normally follow, irrespective of the perpetrator's motivation, unless the Government can
> bear the heavy burden of demonstrating that no prejudice resulted to the defendant."

Henriquez, 731 F.2d at 137-38 (citing and quoting, *inter alia*, United States v. Grammatikos, 633

F.2d 1013, 1019 (2d Cir. 1980);  United States v. Bufalino, 576 F.2d 446, 449 (2d Cir. 1978);

United States v. Paoli, 603 F.2d 1029, 1036 (2d Cir. 1979)).  Although the Henriquez Court found

that other evidence, including logs in possession of the Government, militated against exclusion or

sanctions in that case - something which is distinguishable from the case at bar - the Court was

particularly upset by the continued lack of understanding by the prosecution and government

agencies of the need to preserve evidence.  The Henriquez Court, therefore, directed "the United

States Attorney to advise each and every agency referred to... [in] the Government's brief that in the

future, deliberate, negligent or other destruction of tapes, whether for budgetary reasons or

otherwise, will not be tolerated by this court.  We direct further that the United States Attorney

report back to this court within 90 days advising us of the warnings given and the replies received." Henriquez, 731 F.2d at 138. Although that Order concerned warnings to Coast Guard agencies, given the repeated language from the Henriquez, Bufalino[3], and Grammatikos Courts, among others, this Court considers Customs and the United States Attorney's Office for the Northern District of New York (along with whatever agencies the United States Attorney's Office deals with for criminal investigations) to have been on notice concerning the importance of preserving evidence.

In United States v. Ungar, an issue arose over the destruction of documents. The Court, citing California v. Trombetta, 467 U.S. 479 (1984), stated: "government destruction of exculpatory evidence violates due process only if the exculpatory value of the material was apparent before the material was destroyed, and if the nature of the material was such that the defendant would not be able to obtain comparable evidence by other reasonable available means." Ungar, 648 F. Supp. at 1335. The Ungar Court also found that the destruction of the documents was not in bad faith, was in the ordinary course of business, and the documents had not been in the possession of an investigatory agency.

In the case at bar, however, the video segments were recorded by, and were in the possession of, Customs. Customs recorded the video segments in the course of its duties as an investigatory agency, and with the knowledge that the video segments would be used by prosecutors for criminal charges resulting from the border stop and search. Again, the Second Circuit has held that sanctions may follow deliberate destruction, if the Government is unable to "bear the heavy burden of demonstrating that no prejudice resulted to defendant". Grammatikos, 633 F.2d at 1020 (internal

---

[3] Circumstances and mitigating factors in Bufalino lead that Court to decline sanctions or application of "a strict prophylactic rule" - circumstances and factors which this Court also distinguishes from the case at bar. See Bufalino, 576 F.2d at 450.

quotation marks omitted; citing and quoting <u>Bufalino</u>, 576 F.2d at 449).  The <u>Ungar</u> Court stated

that those sanctions are uncertain for routine destruction by non-investigatory agencies.  <u>Ungar</u>, 648

F. Supp. at 1336-37.  However, as already discussed, Customs is an investigatory agency, and its

destruction of material from an ongoing criminal matter should not have been routine.

The Second Circuit, in discussing the destruction of evidence and subsequent sanctions, has

held that: "the appropriateness and extent of sanctions... depends upon a case-by-case assessment of

the government's culpability for the loss, together with a realistic appraisal of its significance when

viewed in light of its nature, its bearing upon critical issues in the case and the strength of the

government's untainted proof."  <u>Grammatikos</u>, 633 F.2d at 1019-20.  <u>See also</u> <u>Ungar</u>, 648 F. Supp.

at 1336 (citing <u>Grammatikos</u>; <u>United States v. Quintana</u>, 673 F.2d 296, 299 (10th Cir. 1982)

(pragmatic balancing test)).

Both the <u>Ungar</u> Court and the Government in the current case have cited to the Supreme

Court's decision in <u>California v. Trombetta</u>.  <u>See</u> Gov't Response to Motion (Dkt. No. 27) at 7-8.

This Court distinguishes <u>Trombetta</u> from the case at bar.  In <u>Trombetta</u>, the Court found that the

Government need not have preserved breath samples used in a blood alcohol screening test, since

the breath was used as raw data for the development of the final breathalyzer test result.  The testing

device and procedures used by the State of California had been reviewed and certified, and the

routine and good faith destruction of the samples following completion of the test was not found to

have a constitutional defect.  <u>Trombetta</u>, 467 U.S. at 488-89.  Furthermore, the machine itself was

available for inspection, as was its weekly calibration information.  "Respondents could have

utilized these data to impeach the machine's reliability."  <u>Id.</u> at 490.  Defendant could also have

impeached the operator of the machine.  <u>Id.</u>  In the case at bar, however, the proffered video

10

segments were part of a larger video, of which there is no other derivative evidence such as a

synopsis or transcript.  The video is the final version of that evidence, and is thus distinguishable

from the breath sample raw data in <u>Trombetta</u>.

The Court finds that the Defense is correct in its arguments that:

> [o]f equal evidentiary value would have been the opening of the suitcase, the examination of
> the contents, the appearance of the suitcase empty, the discovery of the package and how the
> package looked prior to removal.  Equally important, would have been the reactions of Mr.
> Yevakpor and his companion at the time of the search and discovery in the suitcases.... None
> of the other information captured by the video which was material and arguably exculpatory
> is available, undermining the reliability of a determination in which this information would
> be used, and impacting due process.

Deft's Mem. of Law (Dkt. No. 28) at 2 (citing <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)).  From

<u>Brady</u>, courts have determined that if the Government fails to disclose or preserve material that

could be exculpatory in nature, or favorable to an accused when material to guilt or punishment,

good or bad faith of the prosecution is no longer at issue, but rather a due process violation is at

issue.  The Government's duty "covers not only exculpatory material, but also information that

could be used to impeach a key government witness."  <u>United States v. Coppa</u>, 267 F.3d 132, 135

(2d Cir. 2001) (citing <u>Giglio v. United States</u>, 405 U.S. 150, 154 (1972)).  The Court finds such an

issue to have been raised in the case at bar by the Government's actions and the Defendant's

pleadings.

The <u>Coppa</u> Court also held that "[i]n the context of *Brady*, a defendant is deprived of a fair

trial only where there is a reasonable probability that the government's suppression affected the

outcome of the case..., or where the suppressed evidence 'could reasonably be taken to put the

whole case in such a different light as to undermine confidence in the verdict'".  <u>Coppa</u>, 267 F.3d at

135 (citing, *inter alia*, <u>Kyles v. Whitely</u>, 514 U.S. 419, 435 (1995)).  In the current case, it appears

that the Government intends to use the video segments to show, *inter alia*, the Defendant's possession of the suitcase, as well as Defendant's demeanor and actions during the secondary area inspection.  That would seem to be a large part of the Government's case, and if Defendant had the use of the spoliated video recording, and could demonstrate "the appearance of the suitcase empty, the discovery of the package and how the package looked prior to removal.... the reactions of Mr. Yevakpor and his companion at the time of the search and discovery", such evidence might cast the Government's proffer in a different light to the jury.

The Second Circuit has held that: "[t]he question of whether so much of a tape recording is inaudible or the circumstances surrounding it are so suspicious and make it so untrustworthy that it should not be admitted into evidence in the first place is addressed to the discretion of the trial judge."  United States v. Knohl, 379 F.2d 427, 440 (2d Cir. 1967).

In addition,

> [t]o determine whether an adverse inference is warranted from destruction of evidence, a three-step analysis may be followed: first it must be determined whether party [*sic*] was under any obligation to preserve the records at issue and, if not, the analysis ends there, but if the party did have such a duty, it is necessary to go on to examine both whether the destruction of evidence was willful and whether the evidence would likely have supported the conclusions that the jury would now be asked to infer.

18 AM. JUR. *Proof of Facts 3d* 515, at § 7.4 (2005) (citing, *inter alia*, FED. R. CIV. P. 37(b); Mathias v. Jacobs, 197 F.R.D. 29 (S.D.N.Y. 2000)).

In the case at hand, this Court finds that the proffered evidence, as it currently exists, and given the Government's self-selection of material, is more prejudicial than probative.  The Defense is correct that:

> [o]ut of context and without the ability to examine the actors in the video, the probative value decreases.  There is no audio to the video.  The actions are subject to interpretation.

12

This interpretation would be skued [*sic*] by not presenting the excerpts in context. In addition, the government has the testimony of others to establish the information it seeks to present through the videotape.

Deft's Mem. of Law (Dkt. No. 28) at 3 (citing FED. R. EVID. 403; United States v. Awadallah, 05-2566-CR, 2006 WL 181381 (2d Cir. Jan. 26, 2006)).

Indeed, when addressing Rule 106 and the Doctrine of Completeness, the Second Circuit has held, as the Government points out in its brief (Dkt. No. 27, at 5), that:

[w]e have interpreted Rule 106 to justify the admission of previously excluded portions of partially received documents or statements only when necessary to explain the admitted portion, to place it into context, to ensure a fair and impartial understanding of the admitted portion, or to correct a misleading impression that might arise from excluding it.

United States v. Rivera, 61 F.3d 131, 135-36 (2d Cir. 1995) (citing, *inter alia*, United States v. Castro, 813 F.2d 571, 575-76 (2d Cir.), cert. denied, 484 U.S. 844 (1987)).[4]

The Government has witnesses who can testify as to the chain of events that took place at the border stop and search, and those witnesses will have first-hand knowledge, they will hopefully offer a complete picture, and they will be available for Defense cross-examination.

The appellant in Grammatikos had requested that the Second Circuit give full effect to prior warnings that sanctions would be issued for dereliction of duty by the Government and destruction

---

[4] The Government also cites the cases of United States v. Jackson, 180 F.3d 55, 73 (2d Cir. 1999), and Pereira v. Superintendent, Wyoming Corr. Facility, No. 04 CV 3445 SLT, 2005 WL 2038618, at *4 (E.D.N.Y. Aug. 22, 2005), to support its arguments that Rule 106 does not necessarily require admission of an entire tape recording or document. While correct, the cases are distinguishable given that, in those cases, the materials were fully available for review and evaluation. Again, in this case, having not saved the material the Government has prevented the Defense and the Court from undertaking a proper evaluation of what other evidence may have existed on the missing portions of video, and whether the missing portions would place the proffered segments in a different context, assist in explaining the proffered segments, or clear up any confusion - although the Defense does present such arguments as best it can considering the lack of actual evidence.

or loss of discoverable tapes.  See Grammatikos, 633 F.2d at 1019.  The Court of Appeals declined

to do so.  Id.  That outcome is distinguishable, given that the Grammatikos Court explicitly stated:

"the culpability of the government was not great.  This was not a situation...where discoverable

material is destroyed by law enforcement agents at the conclusion of a fruitful investigation,

knowing that an indictment and trial is looming."  Grammatikos, 633 F.2d at 1020-21.  Those facts

alone are highly distinguishable from the case at bar.  In addition, in Grammatikos a longer time

period existed between recording, ordered destruction and destruction, leading the Court to believe

it unlikely that destruction was due to foul play or because evidence was unfavorable to the

Government.  Id. at 1021.  In the case at bar, however, the directive to save the three one-minute

segments and destroy the rest of the video recording were issued fairly quickly after the relevant

border stop and search, given the Government's statement that the video system "continuously

records and tapes over stored images every 6 to 7 days."  Gov't Response to Motion (Dkt. No. 27)

at 3.  And, the Grammatikos Court also gave weight to the fact that two different DEA regional

offices (Boston and New York) were involved, and Boston was apparently unaware of New York's

involvement or charges, and unaware of what, if any, impact the tapes/evidence in Boston would

have in New York.  Grammatikos, 633 F.2d at 1021.  The Court also found that other recordings

and other evidence, including notes from an agent who had listened to the lost recordings, tended to

show an inculpatory nature of the lost evidence.  Id.  Grammatikos is distinguishable on these last

grounds.

　　　　The Government cites the case of Arizona v. Youngblood, 488 U.S. 51 (1988).  See Gov't

Response to Motion (Dkt. No. 27) at 7-8.  In Youngblood, the evidence that had not been preserved

properly was apparently not used at trial, but was disclosed to the defense, and the defense had the

option of performing tests of its own on the evidence.  Id.  Defense had access to the evidence, in

whatever state it was in.  The affirmative directive to preserve only 12.5% of video, to the exclusion

of the remaining 87.5%, smacks of impropriety by an investigatory agency involved in the

prosecution of the case currently at bar.  See supra.  This Court finds that there exists sufficient bad

faith to warrant sanctions.

Distinguishing prior case law, and performing a pragmatic balancing test of our own, this

Court finds it necessary to issue sanctions for the Government's failures in this case.  In light of

other evidence that exists in this matter (and given that the Defense is not requesting dismissal of

the charges, but is only requesting exclusion, see Deft's Mem. of Law (Dkt. No. 28) at 2-3), the

Court will not order the harshest sanctions of dismissal or adverse inference.  Exclusion is an

appropriate sanction given the government agency's deliberate destruction of evidence, in light of

its knowledge that the evidence could have been used in prosecution or defense.  Therefore, the

video segments are excluded.  See FED. R. CRIM. P. 16(a)(1)(E) & (d)(2)(C)-(D).

From this point forward, let all parties - Government and Defense alike - be on notice: if

selected segments of a video or audio exhibit will be offered at trial, the entire video or audio

exhibit had best be preserved, so that opposing counsel and/or the opposing party(s) may review the

evidence and determine if "any other part or any other writing or recorded statement... ought in

fairness... be considered contemporaneously with" the proffered segments.  FED. R. EVID. 106.

Given the current state of affairs in our nation, when surveillance occurs both with and without our

knowledge, a great danger to liberty would exist if Government could pick and choose segments of

recordings for use in prosecution, destroy the remainder, and then argue that the defense must show

that the destroyed evidence contained exculpatory or otherwise potentially useful and relevant

15

information.  Simply put, the Government cannot make use of video segments that have been

"cherry-picked" when the remainder of the recording has been erased or recorded-over subsequent

to defendant's arrest.  The Government's arguments in support of this practice are gauzy at best.

Defendant's Motion *in limine* as to the three one-minute video segments is granted.

### C.  The Government's Proposed Expert Witness

Defendant also seeks to exclude the proffered expert testimony from New York State Police

Senior Investigator Samuel Mercado ("Mercado"), contending that the Government failed to

provide sufficient notice of expert testimony and that Mercado's testimony is otherwise prejudicial,

irrelevant, confusing and cumulative.  Deft's First Motion *in limine* (Dkt. No. 17, Attach. 1); Deft's

Mem. of Law (Dkt. No. 26).

Federal Rule of Criminal Procedure 16(a)(1)(G) provides that the "government must give to

the defendant a written summary of any testimony that the government intends to use under Rules

702, 703, or 705," and that such summary "must describe the witness's opinions, the bases and

reasons for those opinions, and the witness's qualifications."  FED. R. CRIM. P. 16.  Rule 16 "'is

intended to minimize [the] surprise that often results from unexpected testimony, reduce the need

for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's

testimony through focused cross-examination.'"  United States v. Cruz, 363 F.3d 187, 196 (2d Cir.

2004) (quoting United States v. Figueroa-Lopez, 125 F.3d 1241, 1246 (9th Cir. 1997)).  Defendant

contends that the Government's notice is insufficient in that it does not clearly state Mercado's

opinions or give the bases and reasons for those opinions.  Deft's Mem. of Law (Dkt. No. 26) at 2.

The Court has reviewed the Government's written summary and finds it to be sufficient in

describing Mercado's opinions and the reasons for those opinions.  Letter from AUSA (Dkt. No. 17, Attach. 2; Dkt. No. 26, Attach. 1).

Federal Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise".  FED. R. EVID. 702.  "If the testimony is instead directed solely to 'lay matters which a jury is capable of understanding and deciding without an expert's help', the testimony is properly excludable."  United States v. Castillo, 924 F.2d 1227, 1232 (2d Cir. 1991) (quoting Andrews v. Metro-North Commuter R.R. Co., 882 F.2d 705, 708 (2d Cir. 1989)).  "The Rules of Evidence provide a liberal standard for the admissibility of expert testimony."  United States v. Dukagjini, 326 F.3d 45, 52 (2d Cir. 2002) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588 (1993) and United States v. Boissoneault, 926 F.2d 230, 232 (2d Cir. 1991)).

Expert testimony must also be relevant.  FED. R. EVID. 401; Amorgianos v. Amtrak, 303 F.3d 256, 265 (2d Cir. 2002).  "Relevant evidence is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'"  United States v. Onumonu, 967 F.2d 782, 786 (2d Cir. 1992) (quoting FED. R. EVID. 401).  Even if expert testimony meets the requirements of Rule 702 and is relevant, the district court still has discretion to exclude an expert's testimony if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  FED. R. EVID. 403; United States v. Tapia-Ortiz, 23 F.3d

17

738, 742 (2d Cir. 1994); United States v. McBride, 786 F.2d 45, 49 (2d Cir. 1986);  United States v. Locascio, 6 F.3d 924, 936 (2d Cir. 1993).

The Second Circuit has "repeatedly affirmed that the operations of narcotics dealers are the proper subject for expert testimony under Rule 702." Castillo, 924 F.2d at 1232.  See also United States v. Garcia, 413 F.3d 201, 216 (2d Cir. 2005); Boissoneault, 926 F.2d at 232.  It is well established that experienced narcotics agents "may explain the use and meaning of codes and jargon developed by drug dealers to camouflage their activities" and could  "offer their interpretations of any physical evidence that is properly before the jury." Boissoneault, 926 F.2d at 232-33 (citing, inter alia, United States v. Kusek, 844 F.2d 942, 949 (2d Cir. 1988); United States v. Nersesian, 824 F.2d 1294, 1308 (2d Cir. 1987)).  The Circuit has limited the use of such testimony to "occasions where the subject matter of the testimony is beyond the ken of the average juror." Castillo, 924 F.2d at 1232.  See also United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992) (expert testimony must "have esoteric aspects reasonably perceived as beyond the ken of the jury"); Tapia-Ortiz, 23 F.3d at 740 (same).

The Government intends to call Mercado to testify on the value of the heroin involved in this case and the role and methods of transporters in heroin trafficking.  Letter from AUSA (Dkt. No. 17, Attach. 2; Dkt. No. 26, Attach. 1); Gov't Trial Brief (Dkt. No. 20) at 7.  This includes the type of heroine seized, the origins of the heroine, its purity, the typical wholesale value per kilogram, the retail value per glassine baggie, the difference in retail value depending on location of sale, the typical wholesale weight of a gram, the pricing formula, the estimated value of the heroin seized and the estimated net profits using a price of $10.00 per glassine baggie based upon 10,000 glassine bags per kilogram after sale in New York City.  Letter from AUSA (Dkt. No. 17, Attach. 2;

18

Dkt. No. 26, Attach. 1).  The Government also seeks to have Mercado testify as to the methods used to bring heroin across an international border, the charge for transporting heroin and the ways in which transporters receive compensation, and how they incur incidental expenses associated with the transportation.  Id.

The defense asserts that the only issue in this case is whether Defendant had knowledge of the heroin in the suitcase he presented to border agents and that none of Mercado's proffered testimony makes it more likely than not that Defendant knowingly possessed the controlled substance and attempted to import it with intent to distribute.  Deft's First Motion in limine (Dkt. No. 17, Attach. 1) at 2-3; Deft's Mem. of Law (Dkt. No. 26) at 7-8.  Therefore, Defendant asserts that Mercado's testimony is irrelevant and prejudicial.

Courts in this circuit have found otherwise.  In United States v. Jobin, 327 F. Supp. 2d 310, 312-14 (D. Vt. 2004), the Court admitted expert testimony concerning the quality and street value of marijuana and ecstasy, the marijuana industry in Ontario and the techniques of Canadian drug smugglers, even though the defendant's sole defense was denying knowledge of the narcotics found in his trailer.  The Jobin Court found that such background information was "sufficiently esoteric to be beyond the ken of the average juror" and "will help the jury understand the evidence by providing context for the underlying events."  Id. at 312.  See also United States v. Brown, 776 F.2d 397, 401-02 (2d Cir. 1985), cert. denied, 475 U.S. 1141 (1986) (finding no error in admitting expert testimony regarding a typical drug buy, including the role of a "steerer", where the accused's defense was that he was at the scene but unaware of any drug transaction); United States v. Pugliese, 712 F.2d 1574, 1582 (2d Cir. 1983) (finding no error in admitting expert testimony as to quantity and purity of heroin); United States v. Young, 745 F.2d 733, 761 (2d Cir. 1984) (finding no

error in admitting expert testimony as to the operation of heroin mills); Tapia-Ortiz, 23 F.3d at 741 (finding no error in admitting expert testimony concerning weight, purity, dosages, and price of cocaine). The Jobin Court did, however, deny proposed expert testimony that drug smugglers never use unwitting couriers, as using unwitting couriers created too great a risk of failed delivery. Jobin, 327 F. Supp. 2d at 314. The Court concluded that such testimony was essentially the expert's opinion of the defendant's knowledge of the controlled substance. Id. at 313.

The information contained in the proposed testimony of Mercado concerning the value of the heroin and the role and methods of transporters in heroin trafficking is sufficiently esoteric to be beyond the ken of the average juror, and such testimony will help the jury understand the evidence presented to them. In addition, Mercado's testimony is probative and not substantially outweighed by the danger of unfair prejudice. Therefore, Mercado's testimony on these issues is admissible under Rule 702 and Rule 403.

Mercado may not, however, express an opinion as to whether Defendant did or did not have the mental state or condition constituting an element of the crime charged, as such ultimate issues are matters for the trier of fact. See FED. R. EVID. 704(b); Brown, 776 F.2d at 401.

### III. Conclusion

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant's Second Motion *in limine* (Dkt. No. 18) is **GRANTED** as to the issue of the three one-minute videotape segments, and the Government will not be permitted to use the videotape segments at trial; and it is further

**ORDERED**, that Defendant's First Motion *in limine* (Dkt. No. 17) is **DENIED** as to the

testimony by the Government's expert witness (Mercado), with limitation imposed as to the scope

of said testimony, as discussed above; and it is further

**ORDERED**, that the Clerk serve a copy of this order on all parties.

**IT IS SO ORDERED**.

DATED:  February 14, 2006
          Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge